# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES JEMISON, JR., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|    vs. ) | CAUSE NO. 1:13-cv-1413-WTL-DML |
| ) | |
| PATRICK R. DONAHOE, POSTMASTER ) | |
| GENERAL, ) | |
| ) | |
|    Defendant. ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (Dkt. No. 36). This motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons, and to the extent, set forth below.

### I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The facts taken in the light most favorable to the Plaintiff, Charles Jemison, Jr., are as follow.

Mr. Jemison began working for the United States Postal Service ("USPS") in 1997 as a mail processing clerk in the Indianapolis Processing and Distribution Center ("PDC"). His primary responsibilities included sorting, processing, and loading mail. On June 30, 2011, Mr. Jemison was injured in a motor vehicle accident and unfortunately suffered injuries to his neck, back, and hands. Mr. Jemison continued to work at the PDC, however, until February 2, 2012, when he was forced to take a leave of absence from work to seek medical treatment for his pain.

When employees of the USPS are absent from work, they are required to inform their supervisor. Employees can accomplish this by calling into the USPS's automated phone system—the Enterprise Resource Management System ("eRMS")—to inform management of an unscheduled absence. The eRMS then generates a form, indicating the type and amount of leave the employee requested. The eRMS system is intended to be used for brief absences, less than three days. If an employee is going to be absent for more than three days, USPS policy requires that the employee submit every thirty days, sufficient medical documentation to their supervisor that justifies the continued absence. Failure to comply with these procedures can result in the absence being deemed Leave Without Pay ("LWOP") or Absence Without Official Leave ("AWOL").

On March 13, 2012, Juanita Anderson, the Acting Attendance Control Supervisor at the PDC, sent Mr. Jemison an "Absence From Duty" letter. The letter notified Mr. Jemison that he

had been absent from work since February 2, 2012, but had failed to contact his supervisor since February 2, 2012. The letter reminded Mr. Jemison that he was required to submit medical documentation at appropriate intervals evidencing his continued incapacity for work. The letter also informed Mr. Jemison that he needed to notify Ms. Anderson within five days of his intentions towards his employment with the USPS.

On March 16, 2012, Mr. Jemison responded to Ms. Anderson's letter via fax. He informed Ms. Anderson that he intended to return to work once he was released from medical care with no restrictions, and he included medical documentation for his absence. The attached medical documentation was from Dr. Todd Midla of Atlas Orthopedics and Sports Medicine. Dr. Midla noted that Mr. Jemison was to be off work from March 12, 2012, through March 31, 2012.

In April 2012, Diane Hilliard resumed her role as Attendance Control Supervisor at the PDC. Ms. Anderson then assumed the role of Acting Manager of Distribution Operations at the PDC.

On April 24, 2012, Mr. Jemison completed a "Light Duty Request Form," requesting that he be assigned to a light duty position with the USPS. Dr. Midla completed part of the form, indicating that light duty was recommended for thirty days with the following restrictions: lifting/carrying 21-30 pounds; sitting, standing, walking, bending, twisting, climbing, stretching, and reaching for five hours; and a restriction from standard mail duties.[1] Dr. Midla noted that the restrictions were not permanent. Mr. Jemison faxed this form to Ms. Anderson. Eventually,

---

[1] "Standard mail" has a specific meaning in the USPS. It is "a mail class consisting of mailable matter that is not mailed as First Class Mail or entered as periodicals." Moore Decl. ¶ 4. It includes "political mail, money mailers, circulars, pamphlets, catalogs, newsletters and direct mail." *Id*. Mr. Jemison believes that Dr. Midla restricted him from working with standard mail because standard mail is heavier and bulkier than other mail.

3

the form made its way to Toni Moore, the Lead Manager of Distribution Operations at the PDC;[2] Ms. Moore was responsible for approving or disapproving requests for light duty work for employees.

As of May 8, 2012, Mr. Jemison had not received a response regarding his light duty request. He therefore contacted his union representative. His union representative spoke with Ms. Anderson who informed the union representative that Mr. Jemison's request for light duty work had been disapproved. His request was denied because of his restriction from standard mail. Ms. Moore claims that "[a]ll postal employees . . . are required to work with standard mail" and that there were not "any vacant funded Postal Service positions where Jemison could have avoided working with standard mail in accordance with his medical restrictions." Moore Decl. ¶¶ 4-5.[3] Mr. Jemison filed a union grievance due to his light duty request being denied.

On May 7, 2012, Ms. Hilliard sent Mr. Jemison a second "Absence From Duty" letter, informing him that he had been absent from work since February 2, 2012, and had failed to contact his supervisor since April 24, 2012. Mr. Jemison responded on May 11, 2012, notifying Ms. Hilliard that he requested to be assigned to light duty but that he had not received any information regarding why his request was denied. He informed her that once he received that information, he would consult with Dr. Midla to provide further information, but that his intent was to maintain his employment.

On May 16, 2012, Mr. Jemison received a letter from Ms. Anderson informing him to report back to work on May 21, 2012, to discuss the availability of work that the USPS had for

---

[2] When Ms. Moore was absent or unavailable, Ms. Anderson was responsible for approving or disapproving light duty requests. *See* Moore Decl. ¶ 2.

[3] Mr. Jemison disputes this fact. He believes there were positions available at USPS where he would not have had to work with standard mail.

him. It also informed him to bring an updated "Light Duty Request Form," completed by his physician. Mr. Jemison attended the meeting but did not bring any updated medical information with him because he could not secure an appointment with Dr. Midla in that short amount of time. After the meeting, Ms. Anderson informed Mr. Jemison that there was no need to continue to call in to report his absences; rather, she would manually enter them in.

On June 5, 2012, Dr. Midla clarified in a letter that the previous light duty request form he completed was based on an eight-hour workday. Apparently, Ms. Moore misunderstood Dr. Midla's restrictions, interpreting them to mean that Mr. Jemison was only able to work five hours a day. Dr. Midla clarified that Mr. Jemison was able to work a full eight-hour workday, but could only perform certain movements for five hours out of that eight-hour workday.

On June 23, 2012, Mr. Jemison submitted a second "Light Duty Request Form." Dr. Midla completed part of the form once again, indicating that light duty was recommended for thirty days with the following restrictions: lifting/carrying 21-30 pounds; sitting, standing, and stretching for eight hours; walking, bending, twisting, and climbing for five hours; and working standard mail in increments of two hours. Dr. Midla noted, again, that the restrictions were not permanent. Mr. Jemison gave this form to his union representative who gave it to Ms. Hilliard. Mr. Jemison called Ms. Hilliard who informed him that she forwarded the request to Ms. Moore.

On July 19, 2012, Mr. Jemison received another "Absence From Duty" letter from Ms. Hilliard. The letter informed Mr. Jemison that he had been absent from duty since February 1, 2012, but had failed to contact his supervisor since February 1, 2012. The letter told Mr. Jemison to contact Ms. Hilliard within five days to inform her of his intention with regard to his employment. Mr. Jemison responded to the letter on July 26, 2012, informing Ms. Hilliard that he had twice requested to be assigned to light duty work. He notified her that he had yet to hear

5

whether his second request was approved, but that his intent was to maintain his full-time employment.

On August 9, 2012, Mr. Jemison filed an "Information for Pre-Complaint Counseling" with the Equal Employment Opportunity Commission ("EEOC").

On August 9, 2012, Mr. Jemison received another "Absence From Duty" letter from Ms. Hilliard. The letter informed Mr. Jemison that he had been absent from duty since February 1, 2012, but had failed to contact his supervisor since February 1, 2012. The letter told Mr. Jemison to contact Ms. Hilliard within five days to inform her of his intention with regard to his employment.

On August 10, 2012, Mr. Jemison received a letter from Ms. Moore informing him that his second request for light duty work had expired because thirty days had passed since it was submitted. She did not receive the request from Ms. Hilliard during the time that his restrictions were valid; as noted above, Dr. Midla restricted Mr. Jemison for thirty days. The letter informed him that he needed to submit another light duty request form; however, Mr. Jemison failed to do so.

Mr. Jemison responded to Ms. Hilliard's letter on August 15, 2012, informing her that he intended to maintain his full-time employment. He also requested that his second light duty request form, that was denied, be returned to him. Because Ms. Hilliard found that Mr. Jemison failed to provide her acceptable documentation to support his continued absence from work, she scheduled an investigative interview. On August 17, 2012, Mr. Jemison received a letter from Ms. Hilliard notifying him that he was to report for an investigative interview on August 28, 2012. Mr. Jemison appeared for the interview. After the interview, however, on August 31,

2012, Ms. Hilliard requested that disciplinary action be issued, in the form of removal, against Mr. Jemison for his continued absences. Ms. Anderson concurred in this decision.

On September 13, 2012, Mr. Jemison sent a fax to Ms. Hilliard informing her that he was scheduled for hand surgery and that this procedure would change his light duty request.

On October 5, 2012, Mr. Jemison was sent a "Notice of Removal" charging him with "Failure to Comply with District Leave Requesting Policy Resulting in AWOL." The Notice informed him that he had failed to comply with USPS policy because since July 24, 2012, he had been absent from work but failed to call-in via the eRMS or provide the appropriate medical documentation. The removal was to be effective November 13, 2012.

On October 18, 2012, Mr. Jemison filed a union grievance. Mr. Jemison and others attended an EEO mediation on October 24, 2012. As a result of this mediation, Mr. Jemison received a letter from Ms. Moore on November 8, 2012, informing him that his request for light duty work was approved. Mr. Jemison returned to work with the USPS in December 2012, in a light duty capacity.

Mr. Jemison filed a Charge of Discrimination with the EEOC on November 29, 2012, alleging he was discriminated against on the basis of his sex and disability and that he was retaliated against for participating in protected EEO activity. Mr. Jemison received his right to sue letter on June 30, 2013, and filed suit in this Court on September 6, 2013.

### III. DISCUSSION

Mr. Jemison's Complaint asserts three counts against the Defendant: 1) a claim for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; 2) a claim brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791;

and 3) a claim for retaliation. The Defendant moves for summary judgment on all counts against him. The Court thus turns to the parties' arguments.

### A. Sex Discrimination

Count I of Mr. Jemison's Complaint is a claim for sex discrimination in violation of Title VII. Mr. Jemison alleges that the Defendant discriminated against him on the basis of his sex when he refused to assign him to available light duty work and when he issued him the Notice of Removal. "Title VII forbids an employer from . . . discriminating against an individual 'with respect to his compensation, terms, conditions, or privileges of employment' on the basis of sex." *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014) (quoting 42 U.S.C. § 2000e-2(a)(1)). Mr. Jemison attempts to meet his *prima facie* case of discrimination under the indirect method, or the *McDonnell Douglas* burden-shifting approach.[4] In order to do so, he must produce sufficient evidence that: 1) he is a member of a protected class; 2) he suffered an adverse employment action, 3) he was meeting the USPS's legitimate business expectations, and 4) a similarly situated woman was treated more favorably. *See Harper v. Fulton Cnty, Ill.*, 748 F.3d 761, 767 (7th Cir. 2014). If he does, the burden shifts to the USPS to provide a legitimate, nondiscriminatory justification for refusing to assign Mr. Jemison to light duty work and issuing him a Notice of Removal. *Id.* Once such a justification is offered, the burden shifts back to Mr. Jemison to proffer evidence that the justification is merely a pretext for sex discrimination. *Id.*

Typically, the Court would examine each of these prongs to determine if Mr. Jemison could establish a prima facie case. However, for the purposes of this ruling, the Court will "skip over the initial burden-shifting of the indirect method and focus on the question of pretext." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012). Therefore, the Court assumes,

---

[4] Mr. Jemison does not make any argument with regard to the direct method.

8

without deciding, that Mr. Jemison could establish a prima facie case of sex discrimination.[5] *See Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001) (skipping the prima facie case analysis because the plaintiff failed to present evidence that the defendant's reason for terminating him was pretext).

The Defendant argues that it has proffered legitimate, non-discriminatory reasons for refusing to assign Mr. Jemison to light duty and issuing him a Notice of Removal. Specifically, it notes that Mr. Jemison's first light duty request (April 24, 2012) was disapproved because there were no light duty jobs available due to Mr. Jemison's restriction precluding him from working with standard mail. With regard to his second light duty request (June 23, 2012), the Defendant argues that because Mr. Jemison did not give it directly to Ms. Moore, when she received the form, his restrictions had expired.[6] Finally, it notes that a Notice of Removal was issued to Mr. Jemison due to his failure to provide acceptable evidence justifying his absence from work. The Court finds these reasons to be legitimate and nondiscriminatory. Thus, the burden shifts to Mr. Jemison to show that they are pretextual.

> In determining whether an employer's stated reason is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge. It is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie. In short, to meet this burden, Mr. [Jemison] must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the Defendant's] stated reason[s] that a reasonable person could find [them] unworthy of credence.

---

[5] The Defendant argues that Mr. Jemison cannot meet prongs three and four and therefore cannot establish a prima facie case under the indirect method.

[6] As Ms. Moore notes, she "could not approve or disapprove" Mr. Jemison's second request for light work because she "did not receive it during the time that his medical restrictions were valid on that form." Moore Decl. ¶ 10. Ms. Moore informed Mr. Jemison that he needed to submit another light duty request; however, he failed to do so. Nevertheless, his light duty request was approved in November 2012.

*Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal citations and quotation marks omitted). In all, the Court finds that Mr. Jemison has failed to meet this burden.

With regard to his first light duty request, Mr. Jemison argues that he is "aware" of positions with the USPS that "do not require employees to handle standard mail" and that "[i]n [his] experience, first class mail and standard mail" arrive to the PDC already separated." Jemison Aff. ¶¶ 9-10. Even assuming this is true, this alone is insufficient to show that *Ms. Moore* did not honestly believe that no light duty work was available for Mr. Jemison due to his medical restrictions. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("The question is not whether the employer's stated reason *was inaccurate or unfair*, but whether the employer honestly believed the reason it has offered[.]"). Indeed, as the Defendant notes, many other employees—both male and female—have been approved for light duty work by Ms. Moore; none had any "standard mail" restrictions. *See* Moore Decl. ¶ 8.[7]

With regard to Mr. Jemison's second light duty request, Mr. Jemison argues that while he did submit the form to Ms. Hilliard—not Ms. Moore—he "followed [] up with a phone call [the following] Monday, and Diane Hilliard informed him that it had been forwarded to the MDO, Toni Moore, for review." Pl.'s Resp. at 11. The fact that Mr. Jemison's request eventually "made it to the desk of Toni Moore for review," Pl.'s Resp. at 14, does not controvert the evidence proffered by the Defendant that Ms. Moore did not *receive* the form while his restrictions were valid. In all, the Court does not believe Mr. Jemison has offered sufficient evidence from which a jury could conclude Ms. Moore lied about when she received his request.

Finally, with regard to the issuance of the Notice of Removal, Mr. Jemison argues that he complied with USPS policy by providing medical documentation to his supervisors. While the

---

[7] These employees include the similarly-situated females identified by Mr. Jemison.

Court does not disagree with Mr. Jemison that he did, at times, provide medical documentation and other correspondence to various management-level USPS employees, the fact is that he did not follow strict USPS policy. He needed to provide—to Ms. Hilliard—medical documentation explaining his continued absence form work at least every thirty days. There is no evidence that he did so. While the USPS's decision to issue a Notice of Removal to Mr. Jemison may be unfair (had Ms. Anderson, Ms. Moore, and Ms. Hilliard been in communication with each other or better explained the proper procedure to Mr. Jemison, the issuance of the Notice of Removal likely could have been avoided), "[a]n unwise employment decision does not automatically rise to the level of pretext; rather, a party establishes pretext with evidence that the employer's stated reason or the employment decision 'was a lie—not just an error, oddity, or oversight.'" *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)). There is simply no evidence that Ms. Hilliard's reason for issuing the Notice of Removal to Mr. Jemison—that he was AWOL for failing to comply with USPS policy—was a lie.

Mr. Jemison failed to proffer sufficient evidence illustrating that the Defendant's proffered reasons for refusing to assign him to light duty work and issuing a Notice of Removal were pretext for sex discrimination. Accordingly, the Defendant's motion for summary judgment with regard to Mr. Jemison's sex discrimination claim (Count I) is **GRANTED**.

### B. Rehabilitation Act

Count II of Mr. Jemison's Complaint alleges that the Defendant violated the Rehabilitation Act because he discriminated against him on the basis of his disability in refusing to assign him to light duty work and issuing him a Notice of Removal.

> The Rehabilitation Act protects a qualified individual with a disability from
> discrimination solely because of his disability in any program receiving federal

financial assistance. To make out a prima facie case under the Act, the plaintiff must show: that he suffers from a disability as defined under the Act; that he was otherwise qualified for the job; that he was involved in programs receiving federal financial assistance; and that he was excluded from participation, denied benefits, or otherwise discriminated against solely because of his disability.

*Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (internal citations and quotation marks omitted). The Seventh Circuit has noted that it "looks to the standards applied under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq.*, to determine whether a violation of the Rehab Act occurs in the employment context." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). The Defendant argues that Mr. Jemison's Rehabilitation Act claim fails, and ultimately, the Court agrees.

With regard to Mr. Jemison's first request for light duty work (April 24, 2012), the Defendant argues that his Rehabilitation Act claim fails on the second prong, because Mr. Jemison cannot show that he was otherwise qualified for the job. "A qualified individual with a disability is one who, with or without reasonable accommodation, can perform the essential functions of the job." *Peters*, 311 F.3d at 842. As noted above, Mr. Jemison's first light duty request indicated that he was restricted from working with standard mail and, according to the USPS, all USPS employees work with standard mail. Thus, the Defendant is correct that Mr. Jemison "cannot show that, from his employer's perspective, he could have worked at the Post Office with a reasonable accommodation following his June 2011 motor vehicle accident." Def.'s Br. at 18.[8]

---

[8] As noted above, Mr. Jemison is "aware of several positions at the Indianapolis location that do not require employees to handle standard mail." Jemison Aff. ¶ 2. Even assuming this is true, Mr. Jemison has submitted no evidence suggesting that he could perform, with his medical restrictions, the jobs he "understands" do not require the handling of standard mail.

With regard to Mr. Jemison's second request for light duty work (June 23, 2012), the Defendant argues that his Rehabilitation Act claim fails because Mr. Jemison was not suffering from a disability at the time. "The Rehabilitation Act defines an individual with a disability as any person who (i) has a mental or physical impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." *Branham*, 392 F.3d at 902 (internal citations and quotation marks omitted). Specifically, the Defendant argues that there is not sufficient evidence showing that Mr. Jemison was substantially limited in a major life activity. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Mr. Jemison contends that he has various physical impairments that substantially limit his major life activity of working. *See* Pl.'s Resp. at 16-17 ("It is undisputed that Jemison suffered injuries to his neck, back, ribs and hands. It is undisputed that Jemison's doctor issued restrictions noting physical limitations to Jemison's ability to work, sit, stand, walk, bend, twist, climb, stretch, or reach."). In order to show that the major life activity of working is substantially impaired, a plaintiff must establish "that the impairment significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009) (internal quotation marks omitted).

In this case, although Mr. Jemison contends that he was temporarily unable to perform certain aspects of his job, and thus needed to be assigned light duty work, the Seventh Circuit has made clear that "[t]o be substantially limited in one's ability to work, one must be significantly restricted in the ability to perform more than just a single job or the particular job that one held

before he acquired a disability." *Steffen v. Donahoe*, 680 F.3d 738, 745, n. 5 (7th Cir. 2012) (noting that the plaintiff "was not precluded from performing a broad range or an entire class of jobs"). Mr. Jemison has failed to point to sufficient evidence to allow a reasonable trier of fact to conclude that he was unable to perform a class of jobs or a broad range of jobs, and the undisputed facts in this case actually indicate otherwise.

To begin, Mr. Jemison himself argues that there were a variety of USPS jobs that, despite his restrictions, he believed he could still perform, including casing mail and working as a delivery bar code sorter. *See* Jemison Aff. ¶¶ 11-13 (noting that "the positions typically assigned to employees requesting light duty" are "mail casing and delivery bar code sorter"). Moreover, Dr. Midla noted that Mr. Jemison could lift and/or carry 21-30 pounds, operate machinery, and drive. Dkt. No. 37-12. He could sit, stand, and stretch for eight hours in an eight-hour workday; he was restricted to only five hours of walking, bending, twisting, and climbing. *Id*. Finally, Dr. Midla noted that the restrictions were not permanent. *Id*. In no way has Mr. Jemison presented evidence that these restrictions substantially limited his ability to perform a broad range of jobs.[9]

For the foregoing reasons, the Defendant's motion for summary judgment with regard to Mr. Jemison's Rehabilitation Act claim (Count II) is **GRANTED**.

### C. Retaliation

Count III of Mr. Jemison's Complaint alleges that the Defendant retaliated against him for engaging in the EEO process by refusing to assign him to light duty work and issuing the Notice of Removal against him. Mr. Jemison notes that he "has a history of EEO activity" and

---

[9] Mr. Jemison has also not submitted any evidence illustrating that the USPS regarded him as being disabled or that he had a record of disability due to his restrictions.

specifically "availed himself of the EEO process when he sought EEO counseling on August 1, 2012, which led to EEO mediation on August 10, 2012." Pl.'s Compl. ¶¶ 32, 33.[10]

Mr. Jemison can prove his *prima facie* case of retaliation under either the direct or indirect methods.[11] "Under the direct method of proof, a plaintiff must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012) (internal citation omitted). The Defendant argues that Mr. Jemison has failed to establish a causal connection between his EEO activities and the denial of his requests for light duty and the issuance of the Notice of Removal. The Court agrees.

The evidence of record establishes that Ms. Moore was unaware of Mr. Jemison's EEO activities when she denied his first request for light duty work in April 2012, and when she

---

[10] It appears to the Court that these dates alleged in Mr. Jemison's Complaint are inaccurate. The "Information for Pre-Complaint Counseling" was signed by Mr. Jemison on August 9, 2012, and received by the EEOC on August 13, 2012. Dkt. No. 37-23; *see also* Pl.'s Resp. at 7, ¶ 21 ("Jemison named Diane Hilliard, Terry Lawson, Juanita Anderson and Toni Moore in an EEO information and pre-complaint counseling on August 9, 2012."). Mr. Jemison also testified at his deposition that the EEO Mediation took place in "October of 2012." Jemison Dep. at 168: 3-4; *see also* Pl.'s Resp. at 7, ¶ 27 (referencing the "October mediation").

[11] Mr. Jemison argues he has submitted sufficient evidence to withstand summary judgment on his retaliation claim under the indirect method. In this regard, he only argues that:

> [u]nder the indirect method of proof, the same arguments apply to show that Jemison was meeting the employer's legitimate performance expectations with respect to his light duty requests and similarly-situated nondisabled female employees who had not participated in the EEO process were treated more favorably when their requests were granted and Jemison's was not.

Pl.'s Resp. at 18. The Court will not consider such an undeveloped argument. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Nevertheless, the Court concurs with the Defendant that "Jemison does not have any evidence of similarly situated employees who did not engage in protected activity and were treated more favorably than Jemison with regard to a prolonged absence or a request for light duty work." Def.'s Br. at 19.

informed him his second request for light duty work had expired in August 2012. *See* Moore Decl. ¶ 9 ("I first became aware of his EEO activity on or around October 2012 when an EEO mediation was scheduled and that actually took place on October 24, 2012."). Moreover, Mr. Jemison himself acknowledges in his Response that "the denial of Jemison's light duty request . . . preceded the filing of the EEO counseling because [it was] the discriminatory action[] that prompted the EEO." Pl.'s Resp. at 18. Therefore, it is impossible for Ms. Moore's denial of his light duty requests to have been in retaliation for his EEO counseling request and/or an EEO mediation, neither of which had yet to occur.

Similarly, Ms. Hilliard was unaware of any EEO activity when she requested a Notice of Removal be issued to Mr. Jemison. *See* Hilliard Decl. ¶ 9 ("At the time that I requested disciplinary action to be issued to Jemison in the form of a removal, I was not aware of him engaging in Equal Employment Opportunity ("EEO") activities, or complaining of any type of discrimination."). Mr. Jemison has offered no evidence to the contrary. Accordingly, summary judgment is **GRANTED** in favor of the Defendant on Mr. Jemison's retaliation claim (Count III). *See Johnson v. Cambridge*, 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (citation omitted).

## IV. CONCLUSION

The Court concurs with the Defendant: this case boils down to a "failure to communicate." While the Court sympathizes with Mr. Jemison and the difficulties he had with the USPS, there is simply no evidence that the USPS discriminated unlawfully against Mr.

Jemison. For all the foregoing reasons, the Defendant's motion for summary judgment (Dkt. No. 36) is **GRANTED**.

SO ORDERED: 5/13/15

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification